MISSISSIPPI STATE HIGHWAY COMMISSION *v.* WEST *et al.*

(Division A.   Feb. 28, 1938.)

[179 So. 279.   No. 33063.]

208

W. M. Edwards, of Shubuta, and W. D. Conn, Jr., Assistant Attorney-General, for appellant.

Hal Case, of Quitman, for appellees.

Argued orally by **W. D. Conn, Jr.,** for appellant and by **Hal Case for** appellee.

**McGehee, J.,** delivered the opinion of the court.

This appeal presents the rather unique and most novel situation of a petitioner in a proceeding in eminent do-

main finding it necessary to come here for relief against a money judgment of $1,000 rendered as damages in favor of the appellees, as lessees of the premises sought to be condemned, where all the proof disclosed that the particular lease had been previously terminated under the written provisions thereof. The question for decision is whether or not the allegations of the petition, as well as the very nature of the proceeding itself, preclude the petitioner from questioning the right or title of the appellees under such lease while they remained in possession, although the lessor had demanded that they surrender possession. Appellees also claimed the right to continue in possession under an antecedent oral agreement, which will be hereafter discussed.

The appellant was engaged in the work of changing, relocating, and constructing United States highway No. 11 through the town of Pachuta, in Clarke county, where the N. O. & N. E. Railroad Company owned a certain parcel of land, separate and apart from its railroad right of way, and which had been leased to the Standard Oil Company of Kentucky. The lessee oil company had erected a building on the leased premises, where a gas and oil service or filling station was operated. During the year 1936 the appellees, W. Z. West and wife, were in possession of the building under the usual written lease contract for handling petroleum products for the oil company, and covering the building and the equipment used in operating such service station, after having purchased from a former occupant a garage equipment, also used and maintained in connection therewith. At some time prior to the latter part of that same year appellees had an oral agreement with a representative of the oil company whereby they were given authority to remodel or enlarge the building so as to operate a cafe therein, without the payment of additional rent, but at their own expense, amounting to approximately $350.

On December 31, 1936, the written lease contract above

referred to was renewed, and described the leased premises as a "lot 60 feet by 60 feet facing Newton street, leased from the N. O. & N. E. Railroad Company, together with the building or buildings located thereon," etc. It also contained a stipulation to the effect that, if the lessors' tenancy should be terminated or canceled, then the lease should automatically be void and canceled without liability on the part of the lessor to the lessee.

On February 19, 1937, the district manager of the oil company wrote a letter to its lessee, W. Z. West, which was duly received, reading as follows: "The combination service station, garage and cafe that we have leased to you in Pachuta is on property owned by the railroad, and they have cancelled their lease and given us sixty to ninety days to move out. This letter is written as notice to vacate and would appreciate your acknowledging receipt of same as our agreement with the highway covers razing the building, and we would like to know just how much time you will need to make the necessary arrangements to vacate."

The appellant, Mississippi Highway Commission, had instituted condemnation proceedings against the railroad company to condemn the land for highway purposes, and a judgment was rendered in a special court of eminent domain on February 25, 1937, condemning the land for highway purposes; and the institution of which proceeding furnished the occasion for the cancellation of the oil company's lease by the railroad company.

Appellees refused to vacate the premises after notice to do so, but continued to operate their business on the premises in question. Thereafter, on June 8, 1937, the appellant adopted an order, declaring a necessity to exist for the institution of this eminent domain proceeding for the condemnation of the same parcel of land, as against the appellees, W. Z. West and wife, and the Standard Oil Company of Kentucky, and directing the

same to be instituted. A few days thereafter this proceeding was filed against the appellees as sole defendants, particularly describing the land in its application for the organization of the special court of eminent domain, and declaring it to be the same land included in the judgment rendered in the special court of eminent domain on February 25, 1937, in the case styled "Mississippi Highway Commission v. N. O. & N. E. R. Co., et al." We infer from the record that an adjustment had been made in the meantime between the appellant and the Standard Oil Company for the damages occasioned by the removal of the building from the leased premises. The building and its service station equipment, as well as the improvements made thereon by the appellees, was moved by the oil company after the institution of this proceeding to another location at a distance of approximately 100 feet away, facing the same street, but the appellees retained possession of all their garage equipment, for which they had paid $1,000 to the former occupant of the building, as well as their cafe fixtures and equipment, for which they had paid $850. In other words, none of the property of the appellees, either real or personal, was taken or damaged by the appellant, and whatever damages the appellees sustained consisted of the loss of their location, the interruption of their business, the forfeiture of the improvements made by them on the building under their oral agreement with the oil company, and in being deprived of the privilege of continuing to use without molestation their garage and cafe equipments at the place where the building was originally located.

Judgment in favor of the appellees having been rendered in the special court of eminent domain in the sum of $850, an appeal was taken to the circuit court, where they recovered judgment in the sum of $1,000, from which this appeal is prosecuted.

The petition filed against the appellees did not under-

take to describe the right or interest asserted by them in the leased premises, sought to be condemned, as is required by section 1482, Code 1930, but merely described the tract of land as being the property of the appellees, and which the appellant had already acquired under the condemnation proceedings against the railroad company, as was affirmatively shown by the averments of the petition. At the trial in the circuit court counsel for appellant stated in open court that he had been unable to learn just what interest was claimed by the appellees, and asked for permission to amend the petition so as to provide for the condemnation of whatever interest, if any, the appellees might have in the property. This request was granted, but no amendment to that effect is shown by the record, and the case proceeded to trial on the petition, describing the land as the property of the appellees. During the trial appellees testified that the improvements made on the building during the year 1936 were made by them, under an oral understanding had with the representative of the oil company that they were not to be disturbed in their business during the following year.

However, it is shown by the written lease contract of December 31, 1936, that the continued occupancy of the building by the appellees was contingent upon the condition that the lease held by the oil company might be terminated by the railroad company. The oral agreement for continuing their business uninterrupted during the following year was inconsistent with the stipulation contained in the subsequent written agreement, which provided that their tenancy of the building was contingent upon the cancellation of the oil company's lease by the railroad company. Hence the terms of the subsequent written agreement must control in that behalf. It was not possible for the lessees to continue to use the building for carrying on their business during the following year, in conformity with the oral agree-

ment, if in the meantime their tenancy should be terminated under the terms of their subsequent written agreement.

Therefore, at the time of the institution of this condemnation proceeding against the appellees, they owned neither the land nor the building, and did not hold an unexpired lease thereon. Under the statute they were not necessary parties to the original condemnation proceedings against the railroad company, nor was there any necessity for the institution of the present proceeding against them. They were tenants at sufferance after the termination of their lease under the terms of the letter of February 19, 1937, written to the appellee W. Z. West by the oil company. In view of the fact that they had no further right of occupancy after the termination of their lease by the oil company, in accordance with the written provisions thereof, they had no interest in the premises to be condemned at the time of the institution of this proceeding against them on June 16, 1937.

The court below instructed the jury to find for the appellees, and that they were entitled to due compensation, not only for the value of the property to be taken as specified in the application, but also for damages, if any, which may result to them as a consequence of the taking. The giving of this instruction constitutes reversible error, for the reason that the proof offered by the appellees showed affirmatively that they did not own the property described in the application, and that they were entitled to no compensation for its value. However, there is presented for decision on this appeal the more vital question as to whether the appellees were entitled to recover substantial damages of any character whatever under this proceeding.

Appellant requested a peremptory instruction at the conclusion of the evidence offered by the defendants in the court below, which was refused. Appellees contend

here that the trial court had no other alternative than to give the instruction in their favor, as prescribed by section 1491, Code 1930. The giving of that instruction, however, is mandatory under all circumstances, only as to a justice of the peace, who acts ministerially, rather than judicially, in presiding over a special court of eminent domain. In that court we have an instance of where a justice of the peace has no discretion to exercise or judicial function to perform. It is ordained by statute that whatever practical experience, wisdom, and legal learning he may possess shall avail him nothing. Every step which he is to take is precisely marked out by the statute. The circuit clerk even fixes the time and place for the hearing, and the justice of the peace cannot even pass on his own jurisdiction. His action may be controlled by mandamus in such a case. Sullivan v. Yazoo & M. V. R. Co., 85 Miss. 649, 38 So. 33. Whereas, on appeals to the circuit court the issues are tried de novo, and section 1497, Code 1930, provides that the circuit court shall try and dispose of the case as other issues are tried and disposed of, and enter all proper judgments. For instance, if a condemner should join in a proceeding against the owner of land the mortgagee of record, and it should develop at the trial that the mortgage, though not canceled of record, has been fully paid and satisfied, it could not be successfully contended that the circuit court would be required to instruct the jury to return a verdict for damages in favor of the mortgagee merely because he had been made a defendant to the proceeding, as provided for in the statute. While it is true that under the rule announced in numerous decisions a condemner must determine, at his peril, the names of the owner and other persons having an interest in, or lien on, the premises sought to be condemned, it is also true that the reason underlying such rule is to protect the right both of the condemner and of parties having a beneficial interest in the premises, and such require-

ment does not mean that, if perchance the condemner should name as a party defendant some person who has neither the title nor an interest, he should, nevertheless, pay substantial compensation to such person.

There are numerous decisions holding that the sole object of a petition to condemn land for public use is to ascertain the compensation to be paid; that the averments thereof are binding on the petitioners; and that the defendants are not required to establish their title. Department of Public Works and Buildings of State of Illinois v. Sohm, 315 Ill. 478, 146 N. E. 518; Metropolitan West Side Elevated R. Co. v. Eschner, 232 Ill. 210, 83 N. E. 809; Chicago & Milwaukee Electric Ry. Co. v. Diver, 213 Ill. 26, 72 N. E. 758; Lieberman v. Chicago & Southside Rapid Transit Co., 141 Ill. 140, 30 N. E. 544; Perszyk v. Milwaukee R. & L. Co., 215 Wis. 233, 254 N. W. 753, 93 A. L. R. 395; Hombra et al. v. Smith, Atty. Gen., et al., 159 Tenn. 308, 17 S. W. 2d 921; Skalicky v. Friendship E. L. & P. Co., 193 Wis. 395, 214 N. W. 388; 20 C. J. 967, Par. 376. But we do not understand that the rule announced in these decisions precludes the denial of substantial damages where the proof offered by the defendant affirmatively shows that he neither owns the land nor claims to be the owner thereof, and holds neither a lien nor an unexpired lease thereon.

The case of State ex rel. v. Northern Pac. Ry. Co., 88 Mont. 529, 295 P. 257, holds that the fact that a lease is terminable at the option of a lessor upon thirty days' written notice does not destroy the right of the tenant to compensation, but is a circumstance to be considered in determining the amount of the proper award to be made; citing City of Detroit v. Detroit United Ry., 156 Mich. 106, 120 N. W. 600. But this rule would not apply where the lessor has already exercised the option of terminating the lease prior to the commencement of the condemnation proceeding, as was true in the case at bar. The only right of which a lessee can be deprived.

and for which he is entitled to full compensation, is the right to remain in undisturbed possession during the time permitted by the terms of his contract.

In Schreiber et al. v. Chicago & E. R. Co., 115 Ill. 340, 3 N. E. 427, the facts were, in substance, that the railroad company had condemned title to real property for the purpose of constructing a railroad. At the time of the condemnation the premises had been leased to Schreiber. The rights of both the owner and his lessee were sought to be condemned in the same proceeding. A hearing was had as to the owner of the premises at the first term of the court, and his damages were adjudicated. The rights of the lessee were not adjudicated until twelve months later. Pending the litigation, the lessee's term expired. And that court held that the appellants had no further right of possession as lessees, and they could not recover for the value of the improvements and the cost of the removal, and for damages to their business.

In Los Angeles County Flood Control Dist. v. Andrews, 52 Cal. App. 788, 205 P. 1085, the lessee was holding under a three-year lease, which was terminated by its own limitations on June 1, 1919. Condemnation proceedings were started on March 20, 1919, but the case was not tried until July 24th of that same year. The lessee continued to occupy the premises for his full term, and then held over until during the trial, as a tenant, from month to month, continuing to pay rent to the owner. The court held that there was no liability to the lessee, since the leasehold interest was not taken nor molested by the decree of condemnation. To the same effect is the holding in the cases of Cincinnati v. Schmidt, 14 Ohio App. 426; and In re Third Street Improvement in City of St. Paul, 178 Minn. 552, 228 N. W. 162.

In the case at bar the lease of appellees was terminated by the act of the oil company pursuant to the express terms thereof, as hereinbefore stated, under the letter

of February 19, 1937, several months prior to the commencement of this proceeding. It was held in the case of Tonkel v. Riteman, 163 Miss. 216, 141 So. 344, that "It is the duty of a tenant when his period of tenancy has expired to surrender the premises to his landlord or else to have procured a new contract, and, if he fails to do either, the landlord may treat him as a trespasser or as a tenant under the previous terms, according to the option of the landlord."

The lessor oil company did not choose to treat the appellees as tenants any longer under the terms of the written lease, after its own lease contract with the railroad company had been terminated, and it became their duty to surrender possession of the premises within the sixty or ninety days granted for that purpose.

But appellees contend that the appellant is estopped to deny their right and title as lessees, for the reason that the pleadings filed by the appellant, as well as the very nature of the proceeding itself, admit such interest or title. The elements of reliance and injury do not enter into this question of estoppel, as they do in an equitable estoppel proper. It is true that as a general rule a party is estopped from taking a position which is inconsistent with one previously assumed in the course of the same action or proceeding. He is bound by allegations or admissions in his own pleadings, and by admissions or agreements on the facts; but not by admissions as to the law. It is not claimed that the appellees have been misled to change their position, or that they will suffer injury by reason of the admission if the estoppel is not declared. Ordinarily a person setting up an estoppel must have been induced to alter his position in such a way that he will be injured if the other person is not held to the admission or attitude on which the estoppel is predicated.

Therefore, we are of the opinion that the doctrine of estoppel by judicial admission does not apply in a pro-

ceeding where the petitioner is required by statute to name as defendants all persons who may have an interest in the property sought to be condemned, and where the petitioner is required to act at its peril in seeing to it that all such parties are so named. The appellant was acting as a governmental agency on behalf of the state, in the expenditure of public funds for right of way purposes, and the public should not be bound for compensation to a party whose proof on the trial affirmatively discloses that he had no title or interest in the property sought to be condemned. While the jury in such a proceeding is never concerned with the question of title, this rule does not apply to the court in its application of the law. If the proceeding, by its very nature, admits the right of the defendant to damages, it does not admit the right to recover any particular amount. The amount to which the defendant is entitled must be disclosed by the proof, and the proof in the present case does not show any recoverable damages. If the appellees had held an unexpired lease at the time of the institution of the proceeding, which was neither subject to termination by the lessor during the period specified, nor had been actually terminated under its own terms and provisions, they would have been entitled to recover the difference between the rent reserved and the value of the lease to them for the purpose for which the premises were being used during the remainder of such unexpired term. But such was not the case, and appellees were entitled to recover at most only nominal damages and costs. Judgment for such damages will be rendered here in the sum of $10 and costs, not on the theory that their right of continued possession was invaded, but because of the fact that they were in possession and were entitled to defend their claim of an interest in the premises after being brought into court under a proceeding of this nature.

Reversed, and judgment here for appellees accordingly.