80 So.2d 529

### CALHOUN COUNTY
v.
### Duke LOGAN.

7 Div. 156.

Supreme Court of Alabama.

Feb. 24, 1955.

Rehearing Denied May 19, 1955.

Chas. Thomason, Anniston, for appellant.

Emerson & Watson and Duke Logan, Anniston, for appellee.

PER CURIAM.

This is an appeal by Calhoun County from a judgment rendered in the circuit court of that county on February 2, 1952. The judgment ascertained the damages and compensation for the taking of appellee's leasehold interest in a tract of land, consisting of five or six acres, at the sum of $3,000, and in said judgment the court ordered and decreed that appellee have and recover of Calhoun County said sum of $3,000.

By agreement of the parties to the appeal in the circuit court the record does not include the probate proceedings, but conceded that the Circuit Court of Calhoun

County had jurisdiction of the case on appeal by Logan from the decree of the probate court condemning said property for highway purposes. We do not know whether Logan's landlord, one Cecil W. Hastings, was originally made a party to the proceeding or not. He was not a party on the appeal. Hastings' contract to lease to Logan is shown by the record to be dated January 29, 1944. The lease was to continue for a period of five years with the right to renew upon giving notice as stipulated. Said notice of renewal was given so as to extend the period to January 29, 1954.

An appeal was taken to the circuit court by Logan on December 23, 1950. Thereafter, and before the proceedings came on for trial in the circuit court and on to wit February 20, 1951, Hastings and his wife executed a right-of-way deed to Calhoun County conveying two hundred and fifty feet in width across their land, of which the tract leased to Logan was included. Said conveyance recited that it was subject to Logan's lease. The record shows that after the execution of this conveyance by Hastings and before the proceedings in the circuit court came on for hearing, the county began building its road through the land in question. The record does not show that the county paid into court the amount of compensation and damages which had been assessed in the probate court, nor had executed the bond as authorized by section 18, Title 19; section 44, Title 23, Code, and section 235 of the Constitution. But since the county began constructing the road through said tract without any apparent objection being made, we will assume that the amount of compensation and damages were paid into court and bond executed although we do not know what was the amount of it.

Subsequent to the beginning of the work by the county in the construction of the road and before the cause came on for hearing in the circuit court, but after the appeal had been taken to that court, Logan sold and conveyed his lease to Hastings, his landlord, including the house which he had erected upon the land as provided in the lease contract. A hearing was then had with trial between Logan and Calhoun County. Hastings was not a party to the proceedings in the circuit court either by intervention, section 247, Title 7, Code, or by an amendment to the petition, section 239, Title 7, Code, or by citation on the appeal. The trial was had without a jury by agreement of the parties, resulting in the judgment of February 2, 1952.

The first question we will consider on this appeal is whether Logan is entitled to receive compensation for the injury to the leasehold, or whether the right to it passed to Hastings under the conveyance to him.

We find the rule to be well established "that where property is purchased which is subject to pending condemnation proceedings, under which title has not vested in the condemnor, and the deed conveying such property is silent as to the right to the award money to be paid, such money belongs to, and is recoverable by the vendee". 82 A.L.R. 1063. There are many citations and extracts from cases which support that view, among them is the case of Security Co. v. Rice, 215 Cal. 263, 9 P. 2d 817, 818, 82 A.L.R. 1059. The rule is stated in substantially the same language in 29 C.J.S., Eminent Domain, § 202, p. 1117, citing many of the same cases and others.

In the case of Security Co. v. Rice, supra, the Supreme Court of California was dealing with a similar question. It was observed that under its statute "in condemnation proceedings the title to the property condemned does not vest in the public until payment has been made as required by the verdict of the jury or judgment of the court and a copy of the final order of condemnation has been filed for record". The court held that after the judgment fixing the amount of the award was made, but before the amount of it was paid into court, the defendant, owner of the premises, conveyed them to another, the purchaser was entitled to the award. But that if after the order of condemnation and payment of the money into court the conveyance is made, the purchaser is not entitled to the award but it remains that of the seller unless the con-

veyance contains a provision to the contrary. In that case the purchaser was not a party to the proceeding. At the time of the conveyance the proceeding was pending in court but there had been no order of condemnation. The amount of the award was later ascertained and paid into court. Thereupon the conveyance was held to pass to the purchaser the right to receive the award. The ruling was made to hinge upon the fact that the rights of the public could not vest until after the condemnation had been adjudged, the compensation and damages ascertained and paid into court. The original owner who was the party defendant had received the amount thereof from the court. The purchaser sued him for the same in a separate action. The court permitted such suit to be maintained, and awarded the amount of the compensation to the purchaser.

The first provision for the order of condemnation in our statutes is in section 16, Title 19, Code, to the effect that the probate court must make an order of condemnation upon the payment of damages and compensation assessed and reported by the commissioners or the deposit of the same in court. But an appeal is triable de novo in the circuit court. Section 17, Title 19, Code. Pending that appeal the judgment of the probate court is not suspended to enable petitioner to enter upon the land on a deposit in court of the amount of the award and the execution of a bond. Section 18, Title 19; section 44, Title 23, Code; section 235, Constitution. On the appeal the court tries de novo not only the question of damages and compensation but also the right to condemn under section 7, Title 19, Code. City of Birmingham v. Brown, 241 Ala. 203, 2 So.2d 305; Williams v. Jefferson County, 261 Ala. 76, 72 So.2d 920. An appeal may be taken to the Supreme Court from the judgment of the circuit court. Section 23, Title 19, Code.

Section 24, Title 19, in harmony with section 16, Title 19, provides that the (final) order of condemnation upon the payment of the sum ascertained and assessed or deposit of it in court shall vest in the applicant the easement proposed to be acquired.

Section 16, Title 19, does not provide for the vesting in the applicant of the easement by the deposit of the money and the execution of the bond. Section 24, supra, further provides that if an appeal shall be taken, which means to the Supreme Court, the petitioner shall be entitled to enter upon the land so condemned for the uses and purposes stated in the application upon deposit in court of the amount of the damages and compensation so assessed and the costs of the proceedings for the parties whose land is sought to be condemned, and that such easement shall not vest absolutely in the petitioner until the final determination of the cause and the payment or deposit in court of the damages and compensation as shall be then adjudged.

We think it is apparent from those provisions of the law that the whole proceeding is *in fieri* and the easement does not vest until there is a final order of condemnation effective upon payment of the sum ascertained and assessed, and its payment together with the costs of the proceeding either into court or to the owner thereof. Alabama Midland Ry. Co. v. Newton, 94 Ala. 443, 10 So. 89; Meginnis v. Nunamaker, 64 Pa. 374; see 82 A.L.R. 1065; Obst v. Covell, 93 Minn. 30, 100 N.W. 650. And if the defendant in a condemnation proceeding, who is the owner of the land sought to be condemned, conveys the same to another before the title vests by reason of the condemnation, as declared in section 24, supra, the purchaser obtains thereby the right to the amount of the award. But that does not militate against the right to have the condemnation ordered and payment into court of the amount of the award.

In the instant case, Hastings acquired Logan's interest prior to the vesting of the easement in the petitioner by virtue of the proceeding, and thereby acquired the right to the compensation which is to be fixed for taking an easement in the leasehold. He is not a party to this suit, but having acquired the land pending the suit is bound by the result thereof. Smith v. Jeffcoat, 196 Ala. 96, 71 So. 717; Trogden v. Winona & St. Peter R. Co., 22 Minn. 198.

In the case of Smith v. Jeffcoat, supra, an easement was acquired after the petition for condemnation was filed. The lessee claimed damages in a separate suit for moving a storehouse which he had leased and which was on the condemned premises. The defendant had succeeded to the right acquired by the condemnor. The court held that the right of the condemnor to remove the storehouse was superior to the right of the lessee to keep it on the premises pending the lease. Pending the condemnation proceeding the lease was held to be subject to that proceeding, so as to confer on the condemnor the right to remove the storehouse. There was no controversy in that case between the lessee and lessor as to the ownership of the award. The valuation was as of the date of the petition. That holding in no manner conflicts with the holding in this case. The statement in the opinion that a tenant acquiring a lease after the commencement of the condemnation proceeding was entitled to no compensation was wholly foreign to any controversy in the case, not material to the issues then existing or which could be added, and evidently not carefully considered and did not refer to the time of taking as important. A reference to Lewis on Eminent Domain, there made, shows that the statement is not there supported. But it was stated that such a person took subject to the right of condemnation then pending. We fully recognize that principle. The two cases cited in the opinion supra do not support that feature of it.

■ It is immaterial to the county whether Logan or Hastings is entitled to the amount of the award. There should not be rendered a personal judgment in this proceeding against the county in favor of either Logan or Hastings. The only judgment which should be. rendered, assuming that the petition should be granted, as it was, is an order of condemnation effective upon the payment of the sum ascertained and assessed by the court (since a jury trial was waived). Alabama Midland R. Co. v. Newton, 94 Ala. 443, 10 So. 89; Mobile & Ohio R. Co. v. Hester, 122 Ala. 249, 25 So. 220, 222; State ex rel. City of Mobile v. Williams, 222 Ala. 274, 132 So. 321.

The judgment should be reversed and the cause remanded for further consideration and decision on the basis of this opinion.

The foregoing opinion was prepared by Foster, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON, STAKELY, GOODWYN and MERRILL, JJ., concur.

LAWSON, J., concurs in the reversal on the ground that no personal judgment should be rendered, but dissents from the holding that Logan is not entitled to the award on account of the disposal of his interest before the final judgment.

MAYFIELD, J., not sitting for the reason indicated by him.

MAYFIELD, Justice.

This cause has been subjected to close scrutiny and given much study prior to my investiture as a member of this Court. A great deal of time has been devoted to this cause by the full Court. Not having had the benefit of these discussions I abstain from participating in a consideration of this cause.

On Rehearing.

PER CURIAM.

The appeal requires a further discussion of the principles treated in the foregoing opinion. Supplementing the facts stated in that opinion, the following are material.

The lease from Hastings to Logan embraced five or six acres of land in a rural wooded section, not suitable for cultivation and not used for any purpose, nor close to a dwelling or other houses. The lease ex-

tended to January 29, 1954, with no right to a further extension. (The final judgment was rendered February 2, 1952.) The lease provided in substance that if a proposed roadway is built through the premises, and the lessee (Logan) considers that it would cause the property to be unsuitable for the purpose for which it is to be used, he would have the right to terminate the lease. While it is not expressly stated in the lease, Logan intended to and did construct a cement block house on the tract near the road: the house to be used as a recreational lodge or retreat. The lease further provided that upon its termination, the lessor should have a right to purchase the improvements made by Logan at a price to be agreed on, otherwise the lessee would have a right to remove such improvements.

In 1950, the exact date not given, the county started condemnation proceedings in the probate court. The date of the probate court's judgment is not given. An appeal to the circuit court was taken on December 23 (26), 1950. On February 20, 1951, Hastings (the lessor) executed a right of way deed to lands described, which included the five or six acres under the lease to Logan and was made subject to the lease. There is an agreement that the proceedings had in the probate court be omitted from the transcript on this appeal, but that they were regular and that the circuit court acquired jurisdiction by an appeal to it. The transcript does not show what the amount of the award was, nor that on the appeal to the circuit court by Logan the county paid said amount into court and executed the bond authorized by law, section 18, Title 19, Code.

In May or June 1951, before the cause went to trial in the circuit court on September 28, 1951, Logan elected to terminate the lease under the clause referred to above, and agreed with Hastings for him to buy the improvements he had made for a consideration of $1,500 and a return to him of $35, the amount stipulated in the lease as the annual rental for the tract. The cause then came on for hearing in the circuit court before the judge without a jury, in which the county was the petitioner and Logan was the sole defendant. Hastings was not a party. Judgment of condemnation was rendered on February 2, 1952 by the circuit court, as heretofore stated. The county was in possession of a conveyance by Hastings and had no controversy with him at the time of the condemnation judgment. The record does not show, as stated above, that the county on the appeal by Logan to the circuit court deposited the amount of the award and executed the bond as authorized by section 18 et seq., Title 19, Code, nor that the county entered upon the land to reconstruct and relocate the road before Logan terminated the lease. We assumed in the original opinion that the county did make the deposit and execute the bond and took possession, and that that was done after the appeal to the circuit court by Logan on December 23, 1950, and prior to the termination of the lease by Logan in May or June 1951. But there is nothing in the record to support an inference as to the time when this was done or whether it was done at all. We could just as well infer that the county took possession after Logan terminated the lease, and at a time when he had no interest in the land.

In the former opinion we applied the principle that if after a condemnation proceeding is begun, the alleged owner, the sole defendant in that proceeding, sells and conveys his interest before the final judgment of condemnation without reserving the right to the compensation to be awarded, the purchaser owning the land at the time of the final condemnation, which is the time of the taking, is entitled to the amount of the award. But upon more careful study of the question, we have concluded that such theory does not apply here for the reason that Logan, the sole defendant to the petition, owned only a leasehold interest and it is therefore only that interest which could be condemned, and that after the appeal was taken to the circuit court, where the cause must be tried de novo, and before the trial was had in that court, the leasehold interest was terminated by the voluntary act of the defendant. Under those circumstances, when the condem-

nation proceeding came on for hearing there was nothing on which it could operate. There was then no leasehold interest. It simply had merged into the reversion, which was not before the court. City of St. Louis v. Rossi, 333 Mo. 1092, 64 S.W. 2d 600 (syl. 22–23); United States v. 26,-699 Acres of Land, etc., 5 Cir., 174 F.2d 367; United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729.

■■ If the foregoing correctly states the facts the subject matter of the petition became moot and the petition was subject to be dismissed. If before the lease was terminated petitioner paid into the probate court the amount of the award, and executed the bond on appeal to the circuit court and entered upon the land, and thereby damaged the value of the leasehold, the bond conditioned as required by law "to pay such damages as the property owners may sustain", section 18, Title 19, Code, would protect defendant and a suit on the bond would lie, although the lease terminated before the petition was heard. But if before the lease was terminated, petitioner, without paying into court the amount of the award assessed in the probate court and without executing the bond authorized by the statute, supra, entered upon the land and thereby depreciated the value of the leasehold interest of the defendant and without defendant's consent, it would be without legal authority and an action at law would lie by the defendant in a separate suit against the county for such wrongful act. Cf. Hunter v. City of Mobile, 244 Ala. 318, 13 So.2d 656. But such claim for damages, whether or not bond was given, would not have the effect of recreating an interest which had terminated in the land and make it subject to be condemned. Without something to condemn the amount of the defendant's damages by reason of such entry could not be assessed in this proceeding. But such claim would not pass out of the defendant by virtue of the termination of his lease. Of course if the lease terminated before the county entered upon the land the defendant would have no cause to complain.

The judgment of the trial court was properly reversed and the cause remanded, but the trial should be conducted in accordance with this modified opinion.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Opinion modified and application for rehearing overruled.

LIVINGSTON, C. J., and SIMPSON, STAKELY, GOODWYN and MERRILL, JJ., concur.

LAWSON, J., dissents.

MAYFIELD, J., not having participated in the original consideration did not participate on the rehearing.